J-A06028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.C., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| V.C., FATHER | |
| Appellant | No. 2691 EDA 2014 |

Appeal from the Order August 22, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2010-04290

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED MAY 08, 2015**

V.C. ("Father") appeals from the custody order entered on August 22, 2014, in the Court of Common Pleas of Montgomery County, that granted him partial physical custody for one week during the summer and shared legal custody with respect to the five children born of the parties' marriage. Upon careful review, we affirm.

Father and S.C. ("Mother") are the natural parents of the following children: A.C., a female, born in July of 1997; J.C., a male, born in May of 1999; S.C., a male, born in March of 2001; T.C., a female, born in November of 2003; and C.C., a male, born in August of 2005 (collectively, "the Children").  We summarize the relevant factual and procedural history of this case as follows.

Father has not seen the Children since January of 2010, when Mother left the marital home with the Children without his prior knowledge. N.T., 8/7/14, at 46; N.T., 8/8/14, at 8-9. On January 20, 2010, Mother initiated a Protection from Abuse ("PFA") action against Father.[1] Mother subsequently initiated separate divorce and custody actions. On February 23, 2010, an agreed-upon temporary one-year PFA order was issued on behalf of Mother and the Children. The PFA order included a provision that granted Mother "primary physical and temporary legal custody," and stated that this provision is "subject to further order under separate custody/divorce case #." Petition to Relinquish Jurisdiction, 5/26/11, at Exhibit A; N.T., 8/8/14, at 11-12. Significantly, at the time of entry of the PFA order, a custody conciliation conference was pending. Neither Mother nor Father appeared

---

[1] Mother's PFA action was precipitated by the following event that occurred in January of 2010, aptly described by the trial court:

> Father had recently purchased a semi-automatic rifle that was styled to appear as if it were the notorious military assault weapon known as the Kalashnikov, or AK-47. Father wanted to show off the weapon to his children, as if it were a toy, but he became frustrated when his various displays failed to induce the children's interest. To get his ten year old son[,] J.C.[,] to turn his head around and to face father and his new toy, father approached from behind and pressed the muzzle of the weapon against the boy's neck.

Trial Court Opinion, 10/21/14, at 2-3.

for the conference, and the custody action was dismissed. N.T., 8/7/14, at 91-92.

Pursuant to the temporary PFA order, Father was excluded from the marital home, and Mother and the Children moved back to the home. N.T., 8/8/14, at 12. A divorce decree was issued on July 6, 2010. On July 17, 2010, Mother married K.P. ("Stepfather"). *Id.* at 117-119. On July 19, 2010, Mother and the Children relocated to the home of Stepfather in Flathead County, Montana, without Father's consent or court approval. *Id.* at 113-115.

Father learned that Mother and the Children had relocated in January of 2011, upon being served with a PFA petition filed by Mother in the District Court of the Eleventh Judicial District of the State of Montana, in and for the County of Flathead ("Montana Court"), requesting an extension of the temporary PFA order. N.T., 8/7/14, at 58, 62-63. The Montana Court issued a temporary PFA order on February 17, 2011. Petition to Relinquish Jurisdiction, 5/26/11, at Exhibit C. By order dated April 5, 2011, following a hearing during which Father testified by telephone, the Montana Court dismissed the temporary PFA order. However, in the same order, the Montana Court directed Father to obtain a psychological evaluation and to "file a copy of the report with this court." *Id.* at Exhibit E. Further, the Montana Court granted an "ex parte emergency jurisdiction order" that Mother "shall have sole custody of the [C]hildren, and the [C]hildren are not

- 3 -

to be removed from the State of Montana[.] [T]his order remains in full effect until a psychological evaluation of [Father] has been completed and filed with this court." *Id.*

In the interim, on March 1, 2011, Father filed *pro se* an emergency complaint for custody in the Montgomery County Court of Common Pleas wherein he requested the Children be returned to Pennsylvania. A custody conciliation conference occurred on May 20, 2011, and, by order the same date, the court directed that the matter be "listed for court." Order, 5/20/11.

On May 26, 2011, Mother filed a petition in the Court of Common Pleas of Montgomery County to relinquish jurisdiction of the custody matter and transfer the case to the Montana Court, or, in the alternative, to stay the Pennsylvania custody matter pending the outcome of the Montana emergency custody matter. By order dated June 16, 2011, Father's custody action was stayed pending resolution of "Montana's exercise of emergency custody jurisdiction. . . ." Order, 6/16/11.

By an agreed-upon interim order dated December 7, 2012, the court directed, in relevant part, as follows: Montgomery County has jurisdiction to address Father's claims for custody.[2] Mother shall have primary physical

---

[2] The order provided that, "[a]fter the resolution of the pending custody matter and so long as Mother continues to reside with the children in
*(Footnote Continued Next Page)*

custody and shall continue to reside in Flathead County. Father will be able to communicate directly with the Children's counselor in Montana regarding issues with the Children, and, upon the counselor's availability, "will be able to communicate with the Children via telephone during their [counseling] sessions, which to the extent possible shall be scheduled weekly." Interim Order, 12/17/12, at ¶ 5. Mother shall "set up a face book [sic] page for the children to communicate with Father and shall provide Father with the face book [sic] page information." *Id.* at ¶ 7.

On March 11, 2013, Father filed an emergency petition to modify custody and petition to hold Mother in contempt of court, wherein he alleged, *inter alia*, that Mother failed to allow the Children to participate in telephone calls with him through their therapist. Father requested that legal and physical custody of the Children be transferred to him due to "Mother's unwillingness to encourage and permit the children to have contact with Father." Emergency Petition, 3/11/13, at ¶ 19(b).

On July 29, 2013, Father filed an amended petition for contempt wherein he alleged that, since the December of 2012 order, only one telephone call, in January of 2013, had occurred. Further, he alleged that Mother closed the Facebook page that had been set up pursuant to the December of 2012 order. By order dated November 1, 2013, the court

*(Footnote Continued)* ———————

Flathead County, Montana, jurisdiction for future custody decisions shall be in Flathead County, Montana." Interim Order, 12/17/12, at ¶ 4.

directed the parties to select a psychologist/counselor for the purpose of commencing Father's telephonic communication pursuant to the December 7, 2012 interim order. By agreed-upon order dated January 30, 2014, the court directed, in part, that "Dr. Dale Goldberg shall supervise the phone conversations between Father and the Children." Order, 1/30/14, at ¶ 1. Further, the court directed "[t]o the extent possible, the phone contact shall occur on a weekly basis." *Id.* On March 24, 2014, and April 21, 2014, Father filed *pro se* petitions for contempt, wherein he alleged that Mother has failed to comply with court orders for telephone contact between him and the Children.

The custody trial resulting in the subject order occurred on August 7 and 8, 2014. The following witnesses testified: William D. Morgan, M.D., who performed a psychological evaluation of Father; Father; Richard Ware, a psychotherapist who supervised Father's telephone calls with the Children; K.C., Father's wife ("Stepmother"); Mother, by visual and telephonic means; and K.P., Mother's husband ("Stepfather"), by visual and telephonic means. In addition, the trial court interviewed the Children separately *in camera*, by visual and telephonic means.

By order dated August 14, 2014, and entered on August 22, 2014, the trial court directed that the parties shall share legal custody. Further, the order provided, in part, that "Father shall have the option of a one week summer visit to Pennsylvania by all five children with the expense to fly the

children to Pennsylvania to be borne by the parents at Fifty Percent (50%) each." Order, 8/22/14. In addition, on the same date, the court issued an addendum to the order, which stated, in part, that, "the summer visits are the only reasonable way to keep Father in touch with the [C]hildren." Addendum to Order, 8/22/14. Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On October 21, 2014, the trial court issued an opinion pursuant to Rule 1925(a).

On appeal, Father presents the following issues for our review:

A. Did the trial court abuse its discretion by insufficiently addressing the custody factors set forth in 23 Pa.C.S. § 5328 and failing to consider the best interests of the [C]hildren?

B. Did the trial court err in failing to consider other relevant factors pursuant to 23 Pa.C.S. § 5328(a)(16), specifically that Mother improperly relocated the [C]hildren to Montana without [c]ourt permission?

C. Did the trial court err in failing to specify the terms of physical custody of the [C]hildren?

Father's brief at 4.

The scope and standard of review in custody matters is as follows.

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those

- 7 -

conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

**R.M.G., Jr. v. F.M.G.**, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting **Bovard v. Baker**, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**R.M.G., Jr., supra** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting*

**Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the

child. "The best-interests standard, decided on a case-by-case basis,

considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004).

The Child Custody Act ("the Act"), 23 Pa.C.S. §§ 5321-5340, became effective on January 24, 2011. Because the proceedings in the instant case occurred after the effective date of the Act, the Act is applicable. ***See C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa. Super. 2012) (concluding that "where the evidentiary proceeding commences on or after the effective date of the Act, the provisions of the Act apply even if the request or petition was filed prior to the effective date.").

When awarding any form of custody, the Act provides an enumerated list of factors a trial court must consider in determining the best interests of a child:

**§ 5328. Factors to consider when awarding custody.**

**(a) *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 9 -

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[3]

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.,** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Further,

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.,** 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.,** 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V.**, 87 A.3d at 822-823. With these standards in mind, we turn to the merits of this appeal.

_____

[3] The Act was amended, effective January 1, 2014, to include the additional factor at 23 Pa.C.S. § 5328(a)(2.1).

We review Father's first and second issues together. Father argues that the court "engaged in a hasty, perfunctory analysis" of the Section 5328(a) custody factors. Father's brief at 16. Further, he asserts that the court's custody decision is fatally flawed for failing to consider Mother's improper relocation with the Children to the State of Montana as a relevant factor pursuant to Section 5328(a)(16). In addition, Father asserts that the court disregarded evidence that, despite his "repeated attempts to reestablish a relationship with his [C]hildren, Mother did everything in her power to alienate the [C]hildren from Father and cut off all avenues of contact." Father's brief at 11. Finally, Father asserts that the court failed to consider testimonial evidence regarding the suitability and safety of Mother's home and neighborhood in Montana and the Children's education through Mother's homeschooling of them.

In its addendum to the order entered on August 22, 2014, the court set forth its assessment of all of the Section 5328(a) custody factors.[4] Although the court provided limited detail with respect to each factor, as stated above, "there is no required amount of detail for the trial court's explanation. . . ." **M.J.M.**, **supra** at 336. Contrary to Father's assertion, we conclude that the court adequately addressed the custody factors, and its

---

[4] The addendum to the order cites the custody factors at 23 Pa.C.S. § 5329(a), which is a typographical error.

decision is based on those considerations. We summarize the court's considerations most relevant to its custody decision.

With respect to Section 5328(a)(3), the parental duties performed by each party, the court found that Mother performed the parental duties during the marriage because "Father was a very hard worker and had little extra time or energy." Addendum to Order, 8/22/14. Father's testimony supports this finding. Father testified he was employed during his marriage to Mother by Lehigh Valley Dairies, where he worked a shift and half, from 2:00 p.m. to 4:00 a.m., five days per week, during the two years prior to his marital separation. N.T., 8/7/14, at 41-43. Father testified he had poor sleep patterns due to his work schedule, and that both his lack of sleep and his work schedule affected the time he spent with the Children. *Id.* at 33-34, 46.

With respect to Section 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgment, the court interviewed the Children who were then seventeen, fifteen, thirteen, ten, and nearly nine years old. The court found that all the Children "strongly desire the status quo in Montana." Addendum to Order, 8/22/14. The Children's *in camera* testimony supports this finding.

With respect to Section 5328(a)(8), the attempts of the parent to turn the child against the other parent, the court found that "Mother has done her

best to alienate the [C]hildren against Father." Addendum to Order, 8/22/14. Mother's and Father's testimony supports this finding.

With respect to Section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child, adequate for the child's emotional needs, the court weighed this factor equally between the parties. The testimony of the parties supports this finding. In addition, the testimony of William D. Morgan, M.D., who performed a psychological evaluation of Father, supports this finding in that he opined that Father is a fit parent. N.T., 8/7/14, at 7.

With respect to Section 5328(a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the court found that this factor favors Mother because she "has the time." Addendum to Order, 8/22/14. Father's and Mother's testimony supports this finding in that, at the time of the subject proceedings, Father continued to work for Lehigh Valley Dairies from 2:00 p.m. to 10:00 p.m., five days per week. N.T., 8/7/14, at 99. Significantly, Father testified he works eight hours overtime per week, usually by working an additional four hours twice per week. *Id.* at 100-101. Mother testified that she does not work outside of the home. N.T., 8/8/14, at 17-18.

With respect to Section 5328(a)(11), the proximity of the parties' residences, the court found the proximity "too distant." Addendum to Order, 8/22/14. The record evidence supports this finding. Father lives in Telford,

Montgomery County, Pennsylvania, and Mother lives in Flathead County, Montana. Mother testified that the distance is 2,300 miles. N.T., 8/8/14, at 54. Father and Mother both testified that they are not able to afford the cost of airline tickets for the Children to fly from Montana to Pennsylvania. N.T., 8/7/14, at 78-79; N.T., 8/8/14, at 54. Father estimated that the ticket cost would be approximately $700 per child. N.T., 8/7/14, at 79.

Finally, with respect to Section 5328(a)(12), each party's availability to care for the child or ability to make appropriate child-care arrangements, the court found that this factor weighs equally between the parties. This finding is supported by the testimony of both Mother and Father's wife, K.C. ("Stepmother"), whom he married in July of 2012. Stepmother testified she would be able to accommodate the Children in the marital residence, and her job "gives a lot of flexibility about what I can and I can't do, and accommodating my hours." N.T., 8/7/14, at 171. Specifically, Stepmother testified she "can work part time. I can go in later. I can take off when I need to. . . ." *Id.*

In its Rule 1925(a) opinion, the court disagreed with Father's assertion that its decision is fatally flawed for failing to consider that Mother relocated with the Children to Montana without Father's consent or court approval. Indeed, the court stated that "it was fully developed during the two day hearing how [M]other came to live in Montana with the [C]hildren without first securing [F]ather's consent or the court's permission." Trial Court

- 15 -

Opinion, 10/21/14, at 7. This Court has long held that "even the rights of natural parents are subordinate to the child's best interest." **Karner v. McMahon,** 640 A.2d 926, 932 (Pa. Super. 1994) (citing **Constant A. v. Paul C.A.**, 496 A.2d 1 (Pa. Super. 1985), overruled, on other grounds, by **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010)); **see also In re J.W.**, 578 A.2d 952, 957 (Pa. Super. 1990) ("The custody, care, nurture, and instruction of children resides first in the children's natural parents, as a constitutionally recognized fundamental right.").

We discern no abuse of discretion by the trial court in finding that, despite Mother relocating with the Children without Father's consent or court approval, the Children's best interests are to remain in the State of Montana with Mother and Stepfather. Specifically, the court denied Father's request for primary physical custody because "the best interests of the [C]hildren dictate that they remain in Montana with [M]other and [Stepfather], as they have been doing well in that situation for more than four years[.] [The court found] that there were no substantial grounds to conclude that they would do better in Pennsylvania living with [F]ather." **Id.** at 5. Similarly, the court found that Father did not

> present any evidence whatsoever that granting his request [for full physical custody of the Children] would be in the best interest of the [C]hildren. Father presented no evidence that [M]other was unfit, that her husband was a potential danger, that living conditions in Montana are inadequate, or that the [C]hildren are being underserved in any way. To the contrary, the evidence showed that [M]other is loving and attentive, and

- 16 -

that [Stepfather] is also loving and attentive. The [C]hildren love him in return and consider him their real father.

Trial Court Opinion, 10/21/14, at 3. Further, the court found that Father "has no more time for the [C]hildren now than he did before."[5] *Id.*

Likewise, contrary to Father's contention that the court disregarded Mother's behavior in alienating the Children, the court found in its assessment of Section 5328(a)(8), noted above, that Mother "has done her

---

[5] The court also found that Father's custody request may be "motivated largely by the desire for something akin to revenge against [M]other." Trial Court Opinion, 10/21/13, at 4. The court based this finding on the following testimony by Father on cross-examination:

Q. You're asking for primary physical custody, correct?

A. Correct.

Q. That's what you want the Judge to do, send the kids here to live with you?

A. Yes.

Q. Don't you think that that would be a pretty traumatic event for them?

A. Yes, it would be.

Q. All right. But that's what you want?

A. It was done to me. Yes.

Q. So that was done, so that's what you want?

A. Well, I haven't seen them for five years. I think I deserve five years at least.

Trial Court Opinion, 10/21/14, at 4-5 (citing N.T., 8/7/14, at 137-138).

best to alienate the [Children] against Father."  Addendum to Order, 8/22/14.  In its Rule 1925(a) opinion, the court further explained, in part, as follows.

> This court was presented with a situation where the [C]hildren are safe, and secure, and they have been doing well in Montana for more than four years.  [Stepfather] is their father-figure. The older children do not want a relationship with their [ ] [F]ather and the youngest child barely remembers him.  The memories that remain are unpleasant.  The [court] noted that [M]other has been largely responsible for this alienation, but the fact remained that the [C]hildren's view of [F]ather is tantamount to his being an unwelcome stranger in their lives. Apart from her disparaging opinion of [F]ather, [M]other is otherwise an attentive, involved, and loving caregiver who is good for the [C]hildren.

Trial Court Opinion, 10/21/14, at 13.  Based on our careful review of the testimonial and documentary evidence of record, we discern no abuse of discretion by the court as to the weight it accorded to Mother's attempt to alienate them[6] or in its thorough consideration of the Children's best

_____

[6] Father also argues that the subject order "imposes no duty on Mother to facilitate communication between Father and the children. . . ."  Father's brief at 16.  We conclude that this argument is waived for not being set forth in the Statement of Questions Involved in Father's brief.  **See Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived).  Even if not waived, we would conclude Father's argument is without merit.  The trial court found that the telephone calls between Father and the Children "were more of a burden to the [C]hildren than an effective means to spend quality time with father."  Trial Court Opinion, 10/21/14, at 5.  Therefore, the court did not order the telephone calls to continue.  The record supports the court's finding in this regard, and the court's decision to not require telephone calls between Father and the Children is reasonable.

interests given their current ages and the impact on their lives if they would be required to move to Pennsylvania.

Further, our review of the record evidence reveals that Father is not without fault in the damage done to his relationship with the Children. Soon after Mother left the marital home with the Children, Father learned that Mother and the Children went to the home of Mother's parents. N.T., 8/7/14, at 48-49. Nevertheless, Father testified he did not attempt to see the Children "[b]ecause they were not communicating. They took the break. They made that break, and that was it. I was cut off right there." *Id.* at 49. In addition, although the final PFA order had a custody provision granting Mother primary physical custody and legal custody and stating that this provision is "subject to further order under separate custody/divorce case #", Father failed to appear at the custody conciliation conference, and the custody case, filed by Mother, was dismissed. *Id.* at 91-92. Moreover, on cross-examination, Father acknowledged that, from January of 2010 to January of 2011, the time that the PFA order was in effect, he did not file any action to modify the custody provision in the PFA order. *Id.* at 92.

We next address Father's contention that the court failed to consider the appropriateness of Mother's home and neighborhood in Montana. Mother testified that she and the Children reside with Stepfather in his double-wide mobile home with four bedrooms, and that the Children have bedrooms. N.T., 8/8/14, at 63-64. Stepfather testified that the mobile

home is 2,028 square feet. *Id.* at 145. In addition, he testified that the family uses a 36-foot travel trailer parked permanently on the property for "recreation, sleepovers, slumber parties. . . ." *Id.* With respect to the neighborhood that the Children live in, Mother testified that she had concerns about the neighborhood, but it has improved due to new neighbors. *Id.* at 70, 73. She testified, "[t]he house next to us . . . had gone under foreclosure, and now we have neighbors that are awesome, and [C.C.] now has boys to play with." *Id.* at 72. Further, Mother testified, "[t]here's been a shift, and this area is probably going to turn into more of an investment area, since it is close to Glacier Park, and that may be what is starting to happen." *Id.* Based on the foregoing testimony, we discern no abuse of discretion by the court in finding Mother's home and neighborhood appropriate for the Children. In addition, we will not disturb the custody decision in this regard to the extent it involves the court's credibility determination in favor of Mother and Stepfather. *See A.V., supra* (stating that we defer to the trial court on issues of credibility and weight of the evidence).

Likewise, we discern no abuse of discretion by the court with respect to the Children's education in Montana. Mother testified that she homeschools all of the Children except J.C., her fifteen-year-old son. N.T., 8/8/14, at 26. In addition, Mother homeschooled the Children during her marriage to Father. *Id.* at 19. Mother testified regarding the Children's

academic progress, and she did not note any problems. *Id.* at 26-40. Based on Mother's testimony and the court's credibility finding in her favor, we discern no abuse of discretion by the court in finding the Children's education to be adequate. As such, Father's first and second issues fail.

In his final issue, Father argues that the court failed to specify the terms of physical custody in the subject order pursuant to Section 5323(f), which provides:

**§ 5323.  Award of custody.**

. . .

(f)  *Enforcement.*  --In awarding custody, the court shall specify the terms and conditions of the award in sufficient detail to enable a party to enforce the court order through law enforcement authorities.

. . .

23 Pa.C.S. § 5323(f).

Father argues the subject order "fails to award physical custody of the [C]hildren to either party", nor provides "'sufficient detail' to make it enforceable. . . ." Father's brief at 21. The trial court responded in its Rule 1925(a) opinion that, "[i]t should be clear to [F]ather that the [court] denied outright his request for primary physical custody of the [C]hildren. There can be no other plausible explanation for why the court expressly granted [F]ather 'the option of a one week summer visit to Pennsylvania by all five children with the expense to fly the children to Pennsylvania to be borne by the parents at Fifty Percent (50%) each.'" Trial Court Opinion, 10/21/14, at

8 (citations to record omitted).  We agree with the court that the custody order and the addendum to the order include sufficient detail for the parties to enforce their custodial awards.  Thus, Father's final issue fails.  Because the trial court's consideration of the Children's best interests was careful and thorough, and the record evidence supports the custody decision, we affirm the custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2015